UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

THE PRUDENTIAL INSURANCE
COMPANY OF AMERICA,

    Plaintiff,

v.                                             CASE NO. 8:18-cv-2821-T-02AEP

JAMES M. GROHMAN and
VALERIE A. BEHELER n/k/a
Valerie Lauridsen,

    Defendants.
_____/

**O R D E R**

This Clerk of Court holds an interest-bearing account of $10,000, which represents the death benefit due as a result of the death of M.Y.G., an infant.[1] Dkt. 12. The life insurance policy was offered to members of the armed services such as Defendant James Grohman by the United States Department of Veterans Affairs pursuant to 38 U.S.C. § 1965 *et seq*. Dkts. 1-7, 12. Mr. Grohman and his wife Rachel were convicted of child abuse felonies in connection with the death of their

---

[1] The policy is group life insurance policy number G-23000. *See* 38 C.F.R. § 9.1(a) ("The term policy [as used in the Servicemembers' Group Life Insurance] means Group Policy No. G-23000, which was effective September 29, 1965, purchased from the insurer pursuant to 38 U.S.C. 1966, executed and attested to on December 30, 1965, and amended thereafter.").

infant child M.Y.G. The Court holds that Lauridsen should be paid the insurance proceeds.

In this interpleader action, Defendants Grohman and Valerie A. Beheler (now Lauridsen)[2] are known as the "Adverse Claimants." Dkt. 12. On March 8, 2019, this Court ordered each Adverse Claimant to state their respective claims to the death benefit by filing a pleading by April 7, 2019. *Id*. Neither Adverse Claimant did so. The Court will now look to the factual allegations of the pleadings on file which include the complaint for interpleader (Dkt. 1), and Ms. Lauridsen's answer to the complaint (Dkt. 10).

## FACTUAL ALLEGATIONS IN THE RECORD

James Grohman, a servicemember of the U.S. Army at all relevant times, is the father of the insured, M.Y.G who was approximately three months old. The infant's death in November 2015 was ruled a homicide caused by "prior episode(s) of head injury now with seizures." Dkt. 1-2. Mr. Grohman pleaded guilty to and was convicted of the Tennessee state law crime of "aggravated child abuse –bodily injury" in connection with the death of the M.Y.G. Dkts. 1 ¶ 14, 1-3. M.Y.G.'s mother, Rachel Grohman, also a servicemember of the U.S. Army at all relevant times, pleaded guilty to and was convicted of the Tennessee state law crime of

---

[2] *See* Dkt. 10 at 6 (Final Judgment of Change of Name).

"facilitation of aggravated child neglect" in connection with the death of M.Y.G. Dkts. 1 ¶ 15, 1-4.

Per the terms of the policy and the statute, 38 U.S.C. § 1970(i),[3] Mr. Grohman was the ostensible, default beneficiary of the insurance on the child. Both Mr. Grohman and Rachel Grohman asserted separate claims to Prudential for the death benefit. Dkts. 1-5, 1-6. By release, Rachel Grohman has since directed that 100% of "any funds that she may be entitled to as secondary or contingent beneficiary" be paid to Valerie Lauridsen. Dkts. 1 ¶ 22, 1-7. Ms. Lauridsen is the adoptive mother of the sole surviving child of James and Rachel Grohman. Dkts. 1 ¶ 23, 10 at 5. She is Mr. Grohman's mother. Ms. Lauridsen made a claim to the proceeds if James and Rachel Grohman "are disqualified to bring this to a resolution for all parties involved." Dkt. 10 at 5. As to his own servicemen's life insurance policy, Grohman had named his mother Valerie Lauridsen, and his wife Rachel each 50% primary beneficiaries. Dkt. 1-1.

---

[3] "Any amount of insurance in force on an insurable dependent of a member under this subchapter on the date of the dependent's death shall be paid, upon the establishment of a valid claim therefor, to the member or, in the event of the member's death before payment to the member can be made, then to the person or persons entitled to receive payment of the proceeds of insurance on the member's life under this subchapter."

**DISCUSSION**

Based on these facts, which this Court must accept as true,[4] Mr. Grohman is not eligible to be a recipient of the death benefit. The payment of proceeds for Servicemembers' Group Life Insurance is governed by 38 U.S.C. § 1970 and 38 C.F.R. § 9.5.[5] Normally the member claimant, Mr. Grohman, would be paid on the dependent's death. 38 U.S.C. § 1970(i).

The regulations provide, however, that certain persons shall not be paid the death benefit. A person "who is convicted of intentionally and wrongfully killing the decedent" may not receive the insurance proceeds. 38 C.F.R. § 9.5(e)(1)(2)(i). Nor may a person "who is convicted of assisting or aiding" the person who is convicted of the wrongful killing, be paid. 38 C.F.R. § 9.5(e)(1)(2)(ii).

In applying the federal statute to determine Mr. Grohman's rights to the proceeds, state law plays a role in determining to whom the proceeds are due. The Tennessee Slayer Statute, Tennessee Code Annotated § 31-1-106 *et seq*., provides that an individual who "feloniously and intentionally kills a decedent" must not be paid the death benefit. These individuals forfeit all benefits with respect to the

---

[4] Neither Adverse Claimant has filed a pleading stating the basis of his or her exclusive right to the proceeds.

[5] This Court's jurisdiction is based on federal question jurisdiction as well as diversity jurisdiction.

decedent's testate or intestate estates as well as suffer revocation of certain interests found in governing instruments. *See* Tenn. Code Ann., § 31-1-106.[6]

Tennessee case law makes it clear that the phrase "feloniously and intentionally kills" does not include an accidental shooting death. *Gerber Life Ins. Co. v. Wallace*, 839 F. Supp. 2d 998 (E.D. Tenn. 2012). In *Wallace*, the parents of a minor child who was accidentally shot by a minor sibling were not barred from recovering as beneficiaries of the proceeds of three life insurance policies insuring the decedent. Even though the parents were charged with criminally negligent homicide in connection with the shooting, the court relied on Tennessee substantive law and concluded that the element of intent is not an element of criminally negligent homicide. *Id.* at 1003 (citing *Moore v. State Farm Life Ins. Co.*, 878 S.W.2d 946 (Tenn. 1994), which determined that "criminally negligent" was one step removed from vehicular homicide, a crime which the Tennessee courts had already determined did not trigger section 31-1-106 to bar recovery of

---

[6] "If the decedent died intestate, the decedent's intestate estate passes as if the killer predeceased the decedent." Tenn. Code Ann., § 31-1-106(b). Section 31-1-106(c)(1)(A) provides that the "felonious and intentional killing of the decedent . . . [r]evokes any revocable . . . [d]isposition or appointment of property made by the decedent to the killer in a governing instrument." Section 31-1-106(e) provides: "Provisions of a governing instrument are to given effect as if the killer disclaimed all provisions revoked by this section or, in the case of a revoked nomination in a fiduciary or representative capacity, as if the killer predeceased the decedent."

insurance proceeds; and noting vehicular homicide was defined as "the reckless killing" of another and did not suggest the killing was intentional).[7]

Prudential did not brief the precise issue of whether insurance proceeds are barred under section 31-1-106 when the beneficiary is convicted of the "Class A Felony" of "aggravated child abuse – bodily injury (under 6)." Dkt. 1 ¶ 14. By its own independent research, the Court has not found a Tennessee case construing section 31-1-106 in the context of aggravated child abuse. Nor does the record before the Court provide any insight into the precise facts surrounding the homicide.[8] The record shows that Mr. Grohman was convicted of aggravated child abuse with bodily injury of his infant child and was sentenced to 13.5 years, Tennessee Department of Corrections. Dkt. 1-3. The bodily injury resulted in the

---

[7] Another case relied on in *Wallace* is *Bolin v. Bolin*, 99 S.W.3d 102 (Tenn.Ct.App. 2002), which upheld the bar of proceeds to a father who intentionally killed his son. In *Bolin*, the father argued that the shooting was accidental, but the evidence suggested otherwise.

[8] "Aggravated child abuse occurs when the accused knowingly, other than by accidental means, treats a child under the age of eighteen in such a manner as to inflict injury and the act of abuse results in serious bodily injury to the child." *State v. Long*, No. E2012-01166-CCA-R3-CD, 2013 WL 5436529, at *21 (Tenn.Crim.App. Sept. 27, 2013) (citing Tenn. Code Ann. §§ 39-15-401(a) and 39-15-402(a)(1)) (unpublished).

child's death. Based on this record, the Court finds Mr. Grohman ineligible under section 31-1-106.[9]

Accordingly, the Court awards the proceeds to Grohman's mother Lauridsen. She is the grandmother of the decedent and is the custodial adoptive parent of the decedent's sibling, the sole surviving offspring of James and Rachel Grohman.

The Clerk shall mail all the funds plus interest to Valerie Lauridsen. Thereafter, the Clerk shall close the case.

**DONE AND ORDERED** at Tampa, Florida, on April 26, 2019.

s/*William F. Jung*
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

COPIES FURNISHED TO:
All parties

---

[9] Mr. Grohman, as ineligible, is deemed to have pre-deceased the insured infant. The only other claimant in this case is Lauridsen.